UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRA V. O., | Case No.: 20cv1634-AJB-LL |
| Plaintiff, | |
| | **REPORT AND RECOMMENDATION** |
| v. | **REGARDING CROSS MOTIONS** |
| | **FOR SUMMARY JUDGMENT** |
| ANDREW SAUL, | |
| Commissioner of Social Security, | **[ECF Nos. 14, 15]** |
| Defendant. | |

Plaintiff Alejandra V. O. brought this action for judicial review of the Social Security Commissioner's denial of her claim for disability insurance benefits. Before this Court are Plaintiff's Motion for Summary Judgment [ECF No. 14 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 15 ("Def.'s Mot.")], and Plaintiff's Reply and Opposition to Defendant's Cross-Motion for Summary Judgment [ECF No. 16 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be

**GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED**. This Court further **RECOMMENDS** the case be **REMANDED** for further proceedings.

## I.     PROCEDURAL BACKGROUND

On November 12, 2013, Plaintiff initially applied for disability insurance benefits ("DIB") pursuant to Title II, as well as for supplemental security income ("SSI") pursuant to Title XVI. See Administrative Record ("AR") at ECF No. 9-3 at 96. In her applications, Plaintiff alleged disability beginning on December 1, 2010. Id. On May 24, 2016, Plaintiff was found not disabled in a final decision by an Administrative Law Judge ("ALJ"). Id. at 96-105.

On August 28, 2017, Plaintiff applied again for DIB. Id. at 255-56. On October 6, 2017, Plaintiff applied again for SSI. Id. at 257-62.[1] In both applications, Plaintiff alleged disability beginning on January 1, 2010. Id. at 255, 257. On January 17, 2018, her applications were initially denied. Id. at 190. Plaintiff requested reconsideration of the initial determination on February 23, 2018, which was also denied. Id. at 196-98. On May 7, 2018, Plaintiff requested a hearing before an ALJ. Id. at 204.

On May 2, 2019, a hearing was held before ALJ James Delphey. Id. at 15. Plaintiff appeared with counsel. Id. at 36. During the hearing, testimony was taken from Plaintiff and Erin Welsh, a vocational expert ("VE"). Id. On September 5, 2019, the ALJ issued a decision based on Plaintiff's application for SSI that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Id. at 28. The ALJ also found that Plaintiff's Title II claim had been legally disposed of adversely to Plaintiff by the previous ALJ, and therefore the ALJ dismissed the claim under the doctrine of res judicata. Id. The ALJ's decision became final on June 23, 2020, when the Appeals Council denied Plaintiff's request for review of the ALJ's ruling. Id. at 1-3.

---

[1] The ALJ incorrectly listed August 25, 2017 as Plaintiff's most recent application date. See AR 15.

On August 21, 2020, Plaintiff filed the instant action for judicial review by the federal district court. ECF No. 1. On March 22, 2021, Plaintiff filed a Motion for Summary Judgment. ECF No. 14. On April 29, 2021, Defendant filed a Cross Motion for Summary Judgment. ECF No. 15. On May 3, 2021, Plaintiff filed a Reply. ECF No. 16. Defendant did not file a Reply in Support of the Motion for Summary Judgment.

## II.  **DISABILITY HEARING**

During the hearing, Plaintiff's counsel noted that since the previous ALJ's decision on May 24, 2016, a change in conditions occurred because Plaintiff turned fifty-five years old. AR 37. The ALJ questioned Plaintiff on her work history. Id. at 39-47. Plaintiff testified that after the ALJ's prior decision she worked as a cashier because she was homeless. Id. at 39. She testified that she got sick three times, including an emergency room visit, and complained of lower back pain, a history of bronchitis, and a severe cough. Id. She complained to her employer that her body was aching, and she was given the option of resigning or scaling back her duties with reduced wages. Id. at 40. Because her new duties would include pushing carts in the parking lot, she resigned. Id. Plaintiff further stated that she was depressed. Id.

Plaintiff also stated that within the past fifteen years she worked at Macy's as a sales attendant and cashier in the children's department, and then as a suit specialist in the men's department where she did tailoring, including bending up and down. Id. at 42-43. She was put in the youth department and started having problems with her body, legs, and sitting down. Id. at 43. She was told by a medical provider that she needed to sit down during her eight-hour shift. Id. Because of her condition, her employer "agreed to out of those eight hours to sit down," but she stated this led to "problems" with her co-workers, and she was eventually given the option to resign or be fired, so she resigned around 2007. Id. Plaintiff testified that her co-workers "took me to court," "gave me anxiety," and "accused me of hitting one lady." Id. at 44.

Plaintiff also testified that in 2004 and 2005, she worked as a home health care aide sporadically for two days per week with help from her husband. Id. at 45-46. Plaintiff

testified she did the cooking, cleaning, bathing, and took her patient shopping and to the pharmacy. Id. at 47. Finally, Plaintiff testified there was a period of about nine years where she did not work, but did some babysitting, and was looking for work as a home health aide. Id. at 44-45.

The ALJ asked Plaintiff how her health had gotten worse since the previous ALJ's decision. Id. at 48. Plaintiff responded that her mental state was "very aggressive," that she got panic attacks, heard noises, and lost sleep. Id. She testified she had continuous overall pain that "doesn't go away for nothing." Id. Plaintiff testified that during the night she got up every hour to stretch, and had muscle spasms and cramps. Id. She further testified she felt stiff getting up, sitting down, and cooking. Id. She also testified she was recently cooking a meal and her hand swelled up and locked in a claw position. Id. She further testified there was no part of her body that did not hurt, and that it was hard to shower because "[e]very drop on my body hurts." Id. at 49.

Plaintiff also testified that she did not cook, clean, or babysit her grandkids "like before." Id. She stated the last time she visited her grandchildren in Florida or Boston was four years ago. Id. at 50. Upon questioning by her counsel, Plaintiff also testified that she had difficulty opening cans, putting on socks, and tying her shoelaces due to problems with her hand. Id. at 52. She further testified she had difficulty keeping balance in both legs, her left leg was very painful, she once fell over in the bathtub, had two canes, and sometimes used a walker. Id. at 52-54. Plaintiff testified that since her last benefits hearing, she had her gall bladder taken out, underwent surgery for a stomach hernia, and was currently discussing the possibility of a pacemaker with her cardiologist. Id. at 55-56. Finally, Plaintiff stated she could lift "less than a gallon of milk," could stand for less than forty-five minutes without using a cane, could sit for no more than thirty minutes before having to stand up, and was laying down every hour during the day "[b]ecause in the night I cannot sleep and it hurts." Id. at 56-59.

The ALJ also questioned the VE, Ms. Welsh. Id. at 59-66. Based on the hypothetical identifying Plaintiff's Residual Functional Capacity ("RFC"), the VE opined that Plaintiff

could perform as a retail cashier, but not as a caregiver because that job usually requires some sort of bathing or dressing. Id. at 62. The VE also opined the retail cashier job could not be performed with a sit/stand option, and that 25% of caregiver positions would be compatible with a sit/stand option. Id. The VE also stated that unskilled positions would be compatible with a sit/stand option and the use of a cane, including a parking lot cashier, bench work, and small parts assembler. Id. at 64. Finally, the VE opined that a person with mental health problems who had exhausted all medical leave, and who because of pain had trouble focusing at work, would not be competitive in the open labor market. Id. at 65.

### III.  **SUMMARY OF THE ALJ'S DECISION**

On August 30, 2019, the ALJ determined that since the August 25, 2017 application was filed, Plaintiff was not disabled as defined by the Social Security Act. Id. at 16. The ALJ noted that after Plaintiff's previous application, she was found not disabled because she could perform past relevant work. Id. at 15. Because Plaintiff's Title II claim had a last insured date before the date of the prior ALJ's decision, the ALJ found the previous ALJ's decision was final and Plaintiff's current Title II claim was therefore precluded. Id. With respect to the remaining portion of Plaintiff's application, however, the ALJ found a change in circumstances affecting the issue of disability, i.e. Plaintiff's age category changed from "closely approaching advanced age" to an "advanced age," which would result in a finding different from the finding made in the previous ALJ's decision. Id. at 16. The ALJ then proceeded to follow the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. AR 18. The ALJ found that Plaintiff's work and record of earnings after the alleged disability onset date did not rise to the level of substantial gainful activities. Id.

At step two, the ALJ found Plaintiff had the severe impairments of fibromyalgia, diabetes, and thyroid disorder. Id. The ALJ also found, however, the conditions were managed medically, and when considered singly or in combination, did not more than

minimally limit her ability to perform basic work activities, and were therefore not severe. Id. at 19. The ALJ also found that Plaintiff's obesity, anxiety, and depression were not severe. Id. at 18-19. With respect to Plaintiff's alleged rheumatoid arthritis and lupus, the ALJ found "[d]espite allegations of pain, the claimant's symptoms alone are not enough to find a medically determinable impairment" and "[w]hile the claimant's allegations of pain are documented, there are no specific limitations or objective diagnostic findings noted." Id. at 20.

At step three, the ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled one of the impairments as defined in 20 CFR Part 404. Id. The ALJ found the record does not support the existence of any functional limitations and/or diagnostic test results, which would suggest the impairments met the criteria of any specific listing. Id. The ALJ noted that "[w]hile there is no specific listing pertaining to fibromyalgia, [he took] into consideration this impairment and its effect [on] the claimant's functional abilities as specified in SSR 12-2p." Id.

With respect to Plaintiff's RFC assessment, the ALJ found Plaintiff had the RFC to perform light work as defined in the Commissioner's regulations, subject to certain exceptions. Id. at 21. Specifically, the ALJ found: "she can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolding; occasionally balance, stoop, kneel, crouch or crawl, have occasional exposure to dust, odors, fumes or pulmonary irritants; and should avoid work at unprotected heights." Id.

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a retail cashier as generally performed at the light exertional level and actually performed at the sedentary level as reported by Plaintiff. Id. at 25, 27. At step five, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile could perform as a retail cashier. Id. Accordingly, the ALJ found that Plaintiff was not disabled. Id. at 28.

## IV. STANDARD OF REVIEW

The Social Security Act permits unsuccessful applicants for benefits to seek judicial review of the Commissioner's final decisions. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (superseded on other grounds).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). It is evidence that a "reasonable mind might accept as adequate to support a conclusion." Id. In determining whether the ALJ's findings are supported by substantial evidence, the court "must consider the entire record as a whole, and may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). When the evidence may be reasonably construed to support more than one rational interpretation, the court must uphold the ALJ's decision. Thomas, 278 F.3d at 954. Further, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014). Additionally, the court may not reverse the ALJ's decision on account of harmless error. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The burden of proving that an error was not harmless falls upon the party attacking the agency's determination. Id.

Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## V. DISCUSSION

Plaintiff challenges the ALJ's unfavorable decision on two grounds. First, Plaintiff contends the ALJ impermissibly rejected Plaintiff's subjective pain testimony. Pl.'s Mot. at 5-17. Second, Plaintiff contends the ALJ improperly rejected Plaintiff's husband's lay testimony concerning her pain. Id. at 17-20. The Court addresses each ground below.

## A. Subjective Symptoms Testimony

### i. Plaintiff's Testimony

As noted above, during the hearing Plaintiff testified that since her previous hearing in 2017 she had continuous overall pain that "doesn't go away for nothing" and caused her to wake up every hour during the night. AR at 48. She testified that during the night she got up every hour to stretch, and had muscle spasms and cramps. Id. She further testified there was no part of her body that did not hurt, that she was in pain "all the time," and that it was hard to shower because "[e]very drop on my body hurts." Id. at 49, 57.

### ii. The ALJ's Treatment of Plaintiff's Testimony

The ALJ found that although Plaintiff's impairments would reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence[.]" Id. at 22. The ALJ summarized portions of Plaintiff's medical record indicating normal physical examinations, successful treatments with medication, and "poor compliance" with medication. Id. at 22-24. The ALJ also noted multiple instances where Plaintiff made statements about her pain to her health care providers that were not fully confirmed upon examination. For example, the ALJ noted:

> In June 2014, the claimant stated pain and spasms in her back and right leg. Physical exam showed tenderness to palpation of the paraspinal muscles, decreased forward flexion, and pain with range of motion of the back. Yet, she had full range of motion of the bilateral lower extremities with 5/5 muscle strength and she was able to perform heel to toe walk. Her fibromyalgia syndrome was described as usually well controlled with Cymbalta and baclofen medication was added.
>
> ….
>
> In May 2018, the claimant reported all over body pain, with no relief from cortisone injections and physical therapy. Physical examination showed tenderness to palpitation in the cervical and lumber spine. Neurological examination was within normal limits, where she had 5/5 muscle strength in all extremities and a normal gait. She was treated with trigger point injections.

In September 2018, the claimant reported 70% pain relief with lumbar trigger point injections, later stating it helped for 2 days.

….

From January 2019 through April 2019, the claimant underwent physical therapy for bilateral knee pain, where treatment records indicated decreased pain and tightness and improved range of motion, strength, and function.

Id. at 22-24 (internal citations to the record omitted).

The ALJ went on to find that Plaintiff's statements were "not generally well-corroborated" because the medical evidence "generally does not support the extent of impairment or loss of function alleged." Id. at 24. The ALJ reasoned:

While the claimant alleged chronic pain and the record indicates some findings of tenderness to palpation in the cervical and lumbar spine, and knees, the record includes numerous physical and neurological examinations that are generally within normal limits. In January 2018, there was noted benefits re[garding] fibromyalgia symptoms with Cymbalta medication. May 31, 2018, musculoskeletal examination was within normal limits, where she had full range of motion in the cervical spine and full muscle strength in the upper extremities. In the hands, she had normal range of motion, normal grip, and full muscle strength. Treatment notes from July 2018, December 2018, and January 2019, show a normal gait and the record generally shows no use of an assistive device for ambulation, calling into dispute any medical need for the wheeled walker with which the claimant presented at her hearing, or a cane. In general, there is a multitude of alleged disabling symptoms that stand in disproportion to the medical evidence, and the claimant's range of activity. Treatment has generally been conservative. Based on full record, there is insufficient basis for greater limitations than are included in the residual functional capacity.

Id. (internal citations to the record omitted).

### iii.    Relevant Law

The Ninth Circuit established a two-part test to determine "whether a claimant's testimony regarding subjective pain or symptoms is credible[.]" See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which

9

could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958. If the ALJ determines that a claimant is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges:

> [T]he ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so. . . . [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure [the court's] review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily . . . . the ALJ [is required] to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "This is not an easy requirement to meet." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834.

"Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn, 495 F.3d at 636 (citations omitted); see also

20 C.F.R. § 404.1529 (listing seven factors an ALJ is required to consider, in addition to objective medical evidence, when evaluating subjective pain testimony). An ALJ may also consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Thomas, 278 F.3d at 959 (citations omitted). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. Id.

### iv.    Summary of the Parties' Arguments

The parties do not dispute that the ALJ found that Plaintiff's impairments could reasonably be expected to cause the severity of the symptom she alleged. See Morris v. Astrue, 323 F. App'x 584, 585 (9th Cir. 2009) (finding that fibromyalgia, sleep apnea, and obesity "could reasonably be expected to produce the pain or other symptoms alleged"). The parties also do not dispute the ALJ found no evidence of malingering. See Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) ("We have previously stated that the 'specific, clear and convincing' standard applies unless an ALJ makes an actual finding of malingering.") (citing Robbins, 466 F.3d at 883).

With respect to the second step, however, Plaintiff argues the ALJ impermissibly rejected Plaintiff's subjective testimony concerning her pain because the ALJ failed to give specific, clear, and convincing reasons for finding Plaintiff not credible in that: (1) the ALJ did not identify the specific testimony he rejected; (2) the ALJ based his decision on a lack of corroborating objective medical evidence; and (3) the ALJ failed to link specific portions of Plaintiff's testimony to the parts of the record supporting the ALJ's decision. Pl.'s Mot. at 7-10. Plaintiff also takes issue with the ALJ's finding that Plaintiff's treatment has "generally been conservative," arguing that doing so fails to consider the record as a whole given that Plaintiff received trigger point injections to treat her pain and was prescribed narcotic medication. Id. at 10. Finally, Plaintiff argues her fibromyalgia is characterized by pain that cannot be confirmed with laboratory tests. Id. at 11-12.

Defendant does not dispute that the ALJ "discounted" Plaintiff's claims concerning her symptoms and limitations. Def.'s Mot. at 8. Instead, Defendant argues the ALJ found

not only that the objective medical evidence did not support Plaintiff's testimony, but that the medical evidence "actually contradicted" limitations beyond her RFC. Id. at 6. Defendant also argues the ALJ properly found Plaintiff's activities of daily living and generally conservative treatment undermined the "extreme degree" of alleged symptoms and limitations. Id. at 7.

### v.    Analysis

For several reasons, the denial of benefits is not supported by substantial evidence and free of legal error. First, the Court cannot determine whether the ALJ properly considered Plaintiff's subjective testimony concerning her pain because the ALJ did not specifically, clearly, or convincingly address Plaintiff's subjective pain testimony in his decision. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [courts] to perform [their] own review, because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (internal quotation marks and citation omitted). As noted above, Plaintiff argues the ALJ rejected Plaintiff's pain testimony because he found it not credible, and Defendant acknowledges the ALJ "discounted" Plaintiff's alleged "symptoms" and "limitations." Nowhere in the ALJ's decision, however, did he explicitly state that he rejected Plaintiff's pain testimony on account of a lack of credibility.[2]

---

[2] In considering the Plaintiff's symptoms, the ALJ first found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22. In proceeding to second step, however, the ALJ did not state the applicable "specific, clear and convincing" standard noted above. For example, the ALJ did not note that in weighing a claimant's testimony, he could consider the claimant's reputation for truthfulness or inadequate explanation failing to seek treatment. See Molina, 674 F.3d at 1113-14 ("[A] claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.") (internal quotation marks and citation omitted). Rather, the ALJ described the second step in considering Plaintiff's testimony as follows:

Instead, the ALJ began by stating, "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22; see also Lambert, 980 F.3d at 1277 (ALJ's finding that claimant's symptoms are not "entirely consistent with the objective medical and other evidence for the reasons explained in this decision" is a "boilerplate statement" routinely included in benefits decisions); Kenneth M. v. Saul, Case No.: 3:19-cv-00110-AJB (RNB), 2019 WL 4674317, at *4 (S.D. Cal. Sept. 25, 2019) ("[W]hile an inconsistency between plaintiff's testimony and the objective medical evidence of record could constitute a reason on which the ALJ could properly rely in support of his adverse credibility determination, . . . it cannot constitute the sole reason supporting the adverse credibility determination."), report and recommendation adopted sub nom. Maye v. Saul, Case No. 19-cv-00110-AJB-RNB, 2019 WL 6052415 (S.D. Cal. Nov. 15, 2019). The ALJ did not, however, clearly and specifically identify the "statements" or "symptoms" that were "not entirely consistent" with the evidence. In an introductory paragraph on the previous page, the ALJ noted that Plaintiff reported in an adult function report that she experienced constant pain all over her body, and that Plaintiff testified to pain all the time and stiff knees. AR 21. The ALJ also noted, however, that Plaintiff reported body spasms, swelling in her heels, dizziness, nausea, and difficulty bending, standing, kneeling, stair climbing, and using her hands. Id. The ALJ also noted that Plaintiff testified that she had swollen hands where she cooked a normal

---

> [T]he [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activity.

Id.

meal the day prior. Id. Accordingly, it is not clear, at least from this introductory paragraph, which of Plaintiff's "statements" and "symptoms" the ALJ found to be "not entirely consistent" with the medical and "other evidence."[3] See Brown-Hunter, 806 F.3d at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony where . . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony.") (emphasis in original); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review.") (internal quotation marks and citation omitted).

Second, the ALJ did not specifically, clearly, or convincingly explain how the medical evidence contradicted Plaintiff's statements. See Brown-Hunter, 806 F.3d at 493-94 (finding legal error where the ALJ based her decision on inconsistencies but "did not specifically identify any such inconsistencies"). After stating that Plaintiff's "statements" and "symptoms" were "not entirely consistent" with the medical evidence, the ALJ went on to note multiple examples in Plaintiff's medical record where Plaintiff reported pain to her health care providers, but where various examinations were "within normal limits." AR 22-24. The ALJ also pointed out instances where Plaintiff's medical record indicated she did not take her medication, and where Plaintiff's condition was noted as improved or stabilized with medication or treatment. Id. The ALJ did not, however, specifically identify which medical evidence contradicted which testimony. Moreover, it is not clear from the examples themselves that Plaintiff's pain testimony was inconsistent with, as opposed to merely unsupported by, the information in her medical record. See Lambert, 980 F.3d at

---

[3] The ALJ also did not specifically and clearly identify the "other evidence," besides medical evidence, he relied on to reach his conclusion regarding the consistency of Plaintiff's statements.

1278 (finding a "relatively detailed overview of [the claimant's] medical history . . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible") (citation omitted). For example, it is not clear how Plaintiff's failure to take her medication or her improvement/stabilization is inconsistent with the testimony she gave before the ALJ concerning her pain. Furthermore, the ALJ provides little to no explanation regarding the purpose or limits of the examinations that were "within normal limits," generally describing the examinations as "physical" and "neurological." Most notably, although the ALJ found that Plaintiff's fibromyalgia "could reasonably be expected to cause the alleged symptoms," see AR 22, the ALJ failed to clearly acknowledge in his decision that fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms" and "there are no laboratory tests to confirm the diagnosis."[4] Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004); Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) (finding that fibromyalgia's symptoms are "entirely subjective" and "[t]here are no laboratory tests for the presence or severity of fibromyalgia"), overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006).

Accordingly, it is not clear from the ALJ's decision the examinations truly undermine Plaintiff's credibility because the ALJ did not address whether the examinations were capable of disproving Plaintiff's pain at the time of the examination, and if so, whether those results undermined the credibility of Plaintiff's pain testimony given at the hearing before the ALJ. See Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding legal error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity of her . . . . pain"); see also Isis A. v. Saul, Case No.: 18cv01728-W-MSB, 2019 WL 3554969, at *1 (S.D. Cal. Aug. 5, 2019) ("The ALJ's

---

[4] Defendant does not dispute Plaintiff's argument that pain caused by fibromyalgia cannot be detected by laboratory tests.

15

generic references to Plaintiff's statements as 'complaints of disabling symptoms and limitations' . . . . did not specifically identify the statements that the ALJ was discrediting."), report and recommendation adopted sub nom. Avina v. Saul, Case No.: 18-CV-1728-W (MSB), 2019 WL 3891076 (S.D. Cal. Aug. 19, 2019).

Third, the ALJ failed to recognize that while inconsistent statements may show a lack of credibility, uncorroborated statements do not necessarily show a lack of credibility, only a lack of support, and cannot serve as the sole basis for rejecting Plaintiff's subjective pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony[.]"); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). After reciting examples of information in Plaintiff's medical record that the ALJ viewed as "not entirely consistent" with unspecified "statements," the ALJ stated, "[t]he claimant's statements about intensity, persistence, and limiting effects of her symptoms are generally not well-corroborated, in that the objective medical evidence generally does not support the extent of impairments or loss of functions alleged." AR 24. The ALJ went on to state, "[w]hile the claimant alleged chronic pain and the record indicates some findings of tenderness to palpation in the cervical and lumbar spine, and knees, the record includes numerous physical and neurological examinations that are generally within normal limits[.]" Id. The ALJ also referenced a "noted benefit re[garding] fibromyalgia symptoms with medication" in January 2018, as well as examinations revealing a full range of motion, full muscle strength (including in her hands), and a normal gait. Id. The ALJ concluded, "[i]n general, there is a multitude of alleged disabling symptoms that stand in disproportion to the medical evidence, and the claimant's range of activity." Id.

The ALJ's reference to Plaintiff's "alleged chronic pain," "statements," and "alleged disabling symptoms" is not specific. For instance, with respect to Plaintiff's "statements,"

the ALJ did not distinguish Plaintiff's statements to her health care providers from her testimony before the ALJ or her statements in her adult function report. See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony[.]"); see also Brown-Hunter, 806 F.3d at 494 (finding legal error where the ALJ failed to identify the testimony she found not credible and failed to "link that testimony to the particular parts of the record supporting her non-credibility determination"). And again, the ALJ did not explicitly state that he rejected Plaintiff's pain testimony because he found it not credible. Rather, the ALJ stated that unspecified "statements" by Plaintiff about her "symptoms" were "not entirely consistent," "generally not well-corroborated," and "in disproportion" with the medical and "other evidence." AR 24.

The ALJ also found the objective medical evidence "generally does not support the extent of impairments or loss of functions alleged." Id. "General" findings, however, are insufficient to reject Plaintiff's pain testimony for credibility reasons. See Reddick, 157 F.3d at 722. The ALJ's only potentially specific and clear finding with respect to Plaintiff's credibility was that "the record generally shows no use of an assistive device for ambulation, calling into dispute any medical need for the wheeled walker with which the claimant presented at her hearing, or a cane[.]" AR 24. However, to the extent the ALJ impliedly found Plaintiff's pain testimony not credible, a finding that Plaintiff's medical need for a walker or cane was in "dispute" because the record "generally" did not show prior use, is not a specific, clear, or convincing reason for doing so.

Defendant argues the ALJ found that Plaintiff's activities of daily living did not support her claim for disabling symptoms and limitations. Def.'s Mot. 7. As noted above, the ALJ found "[i]n general, there is a multitude of alleged disabling symptoms that stand in disproportion to the medical evidence, and the claimant's range of activity." AR 24. It is proper for an ALJ to consider the claimant's daily activities in making a credibility determination. See Thomas, 278 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities are relevant to evaluating symptoms). "One does not need to be 'utterly

incapacitated' in order to be disabled." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)). However, "[o]nly if the level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [a claimant's] credibility." <u>Reddick</u>, 157 F.3d at 722. Moreover, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." <u>Garrison</u>, 759 F.3d at 1016.

Here, the ALJ's reference to Plaintiff's "range of activity" is not, as Defendant argues, a clear, specific, or convincing determination that Plaintiff's testimony is not credible based on her activities of daily living. Although Defendant points to portions of the record suggesting that, at various times, Plaintiff able to "move furniture, walk two to three miles a day, spend two weeks at a hospital caring for her daughter all day, go on vacation with her family, move to the East coast to support her daughter who was going through a divorce, drive, and perform some household chores," <u>see</u> Def.'s Mot. at 7, these activities were not clearly identified by the ALJ as reasons for finding that Plaintiff's pain testimony was not credible. As argued by Plaintiff, this is a post hoc rationale that is not clearly or convincingly laid out in the ALJ's decision. <u>See</u> <u>Connett v. Barhhart</u>, 340 F.3d 871, 874 (9th Cir. 2003) (finding that the district court cannot uphold a rejection of a claimant's testimony based on reasons not articulated by the ALJ). Moreover, as pointed out by Plaintiff and undisputed by Defendant, at least some of the activities were done in response to medically recommended treatment, e.g. walking for exercise, and the ALJ did not address Plaintiff's statements that some of the activities caused her pain. <u>See</u> AR 1043, 1168, 1179.

Ultimately, the ALJ found that Plaintiff provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, and the ALJ did not conclude that Plaintiff was malingering. Other than a lack of supporting objective medical evidence, however, the ALJ's reasons for apparently

rejecting Plaintiff's subjective pain testimony are not specific or clear, and the ALJ did not specifically, clearly, or convincingly find that Plaintiff's pain testimony was not credible. The Court recommends that, upon remand, Plaintiff's subjective pain testimony be reexamined as consistent with this opinion and the required clear and convincing standard. Accordingly, the Court **RECOMMENDS GRANTING** Plaintiff's Motion and **DENYING** Defendant's Motion on this issue.

### B. Lay Witness Testimony

Plaintiff's husband completed a third party adult function report on behalf of his wife in which he states "[t]his person is in constant pain and discomfort due to fibromyalgia, chronic fatigue, heart issues, lack of sleep due to pain, depression, and anxiety." AR 312. In considering the report, the ALJ found:

> The third party adult function report from the claimant's husband . . . . has also been considered. He stated that the claimant has constant pain, discomfort, fatigue, heart issues, lack of sleep due to pain, depression, and anxiety. Yet, he reported that she does light cooking, cleaning, and speaks to people on the phone, activities which depend on how she feels. The record does not reflect that [he] has any formal medical background or training. Further, as the claimant's husband, his statement cannot be viewed as coming from an entirely objective, disinterested third party. Most important, to the extent the statement suggests a more restrictive functional capacity than found herein, it is not supported by or consistent with the record as a whole.

Id. at 21.

### i. Summary of the Parties' Arguments

Plaintiff argues the ALJ failed to provide a legally sufficient rationale to reject her husband's statements in the adult function report because the ALJ failed to provide a germane rationale, incorrectly classified the lay testimony as biased, and inaccurately rejected the testimony simply because it contradicted the ALJ's conclusion. Pl.'s Mot. at 17-19. Defendant argues this was harmless error because the lay witness testimony is duplicative of Plaintiff's testimony. Def.'s Mot. at 10. Further, Defendant argues the lay witness's lack of medical knowledge is relevant to his inability to characterize Plaintiff's

capacity to work. Id. at 11. Defendant also contends the lay witness's closeness to the Plaintiff indicates his bias. Id.

### ii. Relevant Law

Generally, "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Failing to consider lay testimony is reversible error. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). "[A] lack of support from the 'overall medical evidence'" is also not a germane reason for rejecting lay witness testimony. Diedrich, 874 F.3d at 640. However, rejecting lay witness testimony is a harmless error when the lay witness's testimony described the same limitations as the claimant's testimony. Molina, 674 F.3d at 1122. A personal relationship is not a valid reason to reject lay witness testimony. Diedrich, 874 F.3d at 640 (finding that a fiancé's closeness to the claimant was not a germane reason for rejecting her testimony). Additionally, although lay witnesses are not sufficiently competent to provide medical diagnoses, lay witnesses may competently testify to a claimant's symptoms affecting her ability to work. Nguyen v. Chater 100 F.3d 1462, 1467 (9th Cir. 1996).

### iii. Analysis

Plaintiff's husband did not hold himself out to have a formal medical background or training. The ALJ's reliance on the lack of evidence of medical background or training is thus not germane. The ALJ's rejection of the husband's testimony as based on his self-interest is also not necessarily a germane reason for disregarding the testimony. Finally, the ALJ's finding that the testimony is generally inconsistent with the record as a whole is, at least to some degree, conclusory. As indicated by Ninth Circuit precedent, lay witness testimony, like the testimony given by Plaintiff's husband, is competent even if provided by nonmedical experts who are closely related to the claimant. Diedrich, 874 F.3d at 640; Nguyen, 100 F.3d at 1467. Accordingly, the ALJ did not provide germane explanations for rejecting the lay witness testimony.

However, Plaintiff's husband's statements in the adult function report are duplicative of Plaintiff's statements. In Plaintiff's own function report, she states she suffers from constant pain, needs help dressing and bathing herself, and primarily cooks premade and frozen meals. AR 320-22. This is duplicative of Plaintiff's husband's statements that she participates in light housework for fifteen to twenty minutes, id. at 313-14, including light cooking, cleaning, and speaking to people on the phone, depending on how she feels, id. at 21; see also Garrison, 759 F.3d at 1016 (finding that the "ability to talk on the phone, prepare meals once or twice a day, occasionally clean [the claimant's] room, and, with significant assistance, care for [the claimant's] daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, [was] consistent with the pain that [the claimant] described in her testimony"). Accordingly, any resulting error from disregarding Plaintiff's husband's statements in the adult function report was harmless.

## VI.    REMAND VERSUS AWARD FOR BENEFITS

The law is well established that the decision whether to remand for further proceedings or simply award benefits is within the discretion of the district court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980), where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986), or where remand would unnecessarily delay the receipt of benefits for which the disabled plaintiff is entitled, Bilby v. Schweiker, 762 F.2d 716, 710 (9th Cir. 1985).

Here, the Court concludes that further administrative proceedings would serve a meaningful purpose to address the errors identified herein. Therefore, this Court

**RECOMMENDS REVERSING** the ALJ's decision and **REMANDING** this matter for further proceedings to address the errors identified herein.

## V.   CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Cross-Motion for Summary Judgment be **DENIED**, and that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties on or before **August 2, 2021**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties on or before **August 16, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  July 16, 2021

_____
Honorable Linda Lopez
United States Magistrate Judge